IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| ERINMEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NIELSEN MEDIA RESEARCH, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br><br><br><br>NO. ________ |

**PLAINTIFF'S COMPLAINT FOR DAMAGES**
**AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff erinMedia, LLC ("erinMedia" or "Plaintiff"), by its undersigned attorneys, and makes and files this Complaint against defendant NIELSEN MEDIA RESEARCH, INC. ("NMR" or "Defendant"), and in support thereof respectfully shows the Court the following:

## NATURE AND BASIS OF ACTION

1.

This is an action for false advertising arising under Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq., Fla. Stat. § 817.41, and the Florida common law of unfair competition. Plaintiff seeks equitable relief and damages.

PARTIES TO THE ACTION

2.

Plaintiff erinMedia, LLC is a limited liability company incorporated in the State of Florida, organized and existing under the laws of the State of Florida, and conducting business in Pinellas County (St. Petersburg) and Manatee County (Brandenton), Florida.

3.

Defendant Nielsen Media Research, Inc. ("NMR") is a for-profit corporation organized and existing under the laws of the State of Delaware and conducting business in Pinellas County (Oldsmar), Florida. NMR's United States corporate headquarters is located in the State of New York.

JURISDICTION AND VENUE

4.

This Complaint is filed and these proceedings are instituted under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), to obtain injunctive relief and to recover damages and the costs of suit, including reasonable attorneys' fees, against NMR for the injuries sustained by erinMedia by reason of NMR's violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq., Fla. Stat. § 817.41, and the Florida common law of unfair competition.

5.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and 28 U.S.C. § 1338.

6.

This Court has personal jurisdiction over NMR because it transacts substantial business in the State of Florida and maintains offices and significant operational facilities in the State of Florida.

7.

Venue is proper in this district under 28 U.S.C. § 1391. This action arises out of the transaction of business and other activities within this judicial district.

## FACTUAL BACKGROUND

8.

NMR is a television audience measurement company that issues ratings in the United States based on the viewing habits of a very small sample comprised of thousands of viewers.

9.

Plaintiff erinMedia is a competitor which, among other things, seeks to deploy measurement technology that can measure the viewing habits of millions of viewers who receive cable television.

10.

Plaintiff erinMedia and Defendant NMR are in the market for providing national television audience measurement data in the United States.

11.

NMR placed an advertisement in the October 24, 2005 edition of Television Week. Television Week is a television industry trade journal with a nationwide distribution. In the advertisement, NMR claims "Thousands of shows... millions of different viewers... Nielsen counts them all." (See NMR advertisement published in Television Week, Oct. 24, 2005, attached hereto as Exhibit A).

12.

This is false. NMR does not "count them all," and does not count "millions of different viewers" in the United States. NMR's own website, www.nielsenmedia.com, admits that it collects its television audience measurement data not from millions of different viewers, but from only "nearly 10,000 representative homes throughout the United States" (See print-out from Nielsen Media Research website, attached hereto as Exhibit B). Furthermore, NMR does not "count" "all" television shows.

13.

NMR's advertising claim "Thousands of shows… millions of different viewers… Nielsen counts them all." is thus false, deceptive, and misleading.

COUNT ONE

False Advertising In Violation Of The Lanham Act

14.

Plaintiff incorporates herein and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 13 above.

15.

Defendant has adopted and used the advertisement "Thousands of shows… millions of different viewers… Nielsen counts them all." which Defendant has used in interstate commerce, in such a manner so as to falsely, misleadingly, and deceptively claim that it counts millions of different viewers, when in fact, Nielsen does not count millions of different viewers. The advertisement is also misleading in stating that Defendant counts "all" televisions shows.

16.

Defendant has used the advertisement "Thousands of shows… millions of different viewers… Nielsen counts them all." with full knowledge of the falsity of this advertising, and has willfully used and promoted the sale in interstate

commerce of its services so as to misrepresent the nature and quality of Defendant's services, all to Defendant's profit and Plaintiff's damage.

17.

Defendant's literally false, deceptive, and misleading advertising and promotion in interstate commerce violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

18.

Defendant's literally false, deceptive, and misleading advertising has deceived, or is likely to deceive, customers and has influenced, or is likely to influence, customers' purchasing decisions.

19.

Defendant's literally false, deceptive, and misleading advertising has caused and will continue to cause irreparable harm to Plaintiff unless and until Defendant's conduct is enjoined by the Court, and Plaintiff has no adequate remedy at law.

20.

As a direct and proximate result of Defendant's false advertising, Plaintiff's potential customers have been tainted and misled, and, pursuant to 15 U.S.C. §§ 1117 and 1125(a), Plaintiff hereby asserts claims against Defendant for injunctive

and monetary relief, including any damages, profits, costs and attorneys' fees, in an amount to be determined.

## COUNT TWO

### Violation Of The Florida Deceptive And Unfair Trade Practices Act

21.

Plaintiff incorporates herein and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 20 above.

22.

Defendant's literally false, deceptive, and unfair advertising and promotional activities violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq.

23.

Defendant has used the advertisement "Thousands of shows… millions of different viewers… Nielsen counts them all." with full knowledge of the falsity of this advertising, and has willfully used and promoted the sale in the conduct of, and affecting the commerce of, its services so as to misrepresent the nature and quality of Defendant's services.

24.

Defendant's literally false, deceptive, and misleading advertising has deceived, or is likely to deceive, the public.

25.

Defendant's literally false, deceptive, and misleading advertising has caused and will continue to cause irreparable harm to Plaintiff unless and until Defendant's conduct is enjoined by the Court, and Plaintiff has no adequate remedy at law.

26.

Plaintiff has suffered losses in terms of potential customers being misled as a direct and proximate result of Defendant's violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et seq., and pursuant to the Act, Plaintiff hereby asserts claims against Defendant for injunctive relief, any damages, attorneys' fees and costs.

## COUNT THREE

## False Advertising In Violation Of Florida Statute § 817.41

27.

Plaintiff incorporates herein and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 26 above.

28.

Defendant's literally false, deceptive, and misleading advertising and promotional activities violate Fla. Stat. § 817.41.

29.

Defendant's literally false, deceptive, and misleading advertising was made with malice and with the intent or purpose of selling its services and to induce the public to enter into obligations relating to such services.

30.

Plaintiff has suffered losses in terms of potential customers being misled as a direct and proximate result of Defendant's violation of the Fla. Stat. § 817.41, and pursuant to such statute, Plaintiff hereby asserts claims against Defendant for injunctive relief, any damages, punitive damages, and costs, including reasonable attorneys' fees.

## COUNT FOUR

## Unfair Competition In Violation Of Florida Common Law

31.

Plaintiff incorporates herein and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 30 above.

32.

Defendant's literally false, deceptive, and misleading advertising and promotional activities violate Florida common law of unfair competition.

33.

Defendant's literally false, deceptive, and misleading advertising has deceived, or is likely to deceive, customers and has influenced, or is likely to influence, customers' purchasing decisions.

34.

Defendant has used the advertisement "Thousands of shows… millions of different viewers… Nielsen counts them all." with full knowledge of the falsity of this advertising, and has willfully used and promoted the sale in commerce of its services so as to misrepresent the nature and quality of Defendant's services.

35.

Defendant's literally false, deceptive, and misleading advertising has caused and will continue to cause irreparable harm to Plaintiff unless and until Defendant's conduct is enjoined by the Court, and Plaintiff has no adequate remedy at law.

36.

Plaintiff has suffered losses in terms of potential customers being misled as a direct and proximate result of Defendant's violation of the common law of Florida, and pursuant to such, Plaintiff hereby asserts claims against Defendant for injunctive relief and any damages.

## PRAYER FOR RELIEF

**WHEREFORE,** by virtue of the unlawful conduct of NMR as alleged in this Complaint, plaintiff erinMedia respectfully prays that:

A. The Court enter judgment that NMR has engaged in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq., Fla. Stat. § 817.41, and the Florida common law of unfair competition.

B. The Court temporarily restrain and preliminarily and permanently enjoin NMR, its officers, agents, servants, employees, attorneys, and all others in active concert or participation with it who receive actual notice, pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 1116(a), from:

(1) disseminating the advertising and promotional materials attached as Exhibit A;

(2) stating or implying that NMR counts "millions of different viewers;"

C. The Court orders NMR to disseminate, in a form to be approved by the Court, corrective advertising sufficient to reach all those who were the target of its false and deceptive claims;

D. The Court order NMR, pursuant to 15 U.S.C. § 1116(a) to file with the Court and serve on erinMedia within thirty days after entry of the injunction

a report in writing and under oath setting forth in detail the manner and form in which NMR has complied with the injunction;

E. The Court award erinMedia any damages and NMR's profits from NMR's false and deceptive advertising and unfair competition, in an amount to be determined by the trier of fact and to be increased as provided by applicable law due to NMR's willful violation of the law;

F. The Court declare that this is an "exceptional case" under 15 U.S.C. § 1117(a) and/or that Fla. Stat. § 501.2105 applies, entitling erinMedia to an award of its attorneys' fees and full costs;

G. The Court award erinMedia its costs and disbursements in connection with this action;

H. The Court award erinMedia punitive damages for NMR's intentional, willful, and malicious conduct to the extent permitted by law; and

I. For such further relief as the Court deems just and proper.

Respectfully submitted this 11th day of January, 2006.

Tammy N. Giroux

C. Philip Campbell, Jr., Esquire
Florida Bar No. 160973
**Trial Counsel**
Tammy N. Giroux, Esquire
Florida Bar No. 0999938
SHUMAKER, LOOP &
KENDRICK, LLP
Bank of America Building
Suite 2800
101 East Kennedy Blvd
Tampa, Florida 33602
(813) 229-7600 (telephone)
(813) 229-1660 (fax)

Richard A. Schneider
Jeffrey S. Cashdan
Christina E. Eisenhard
Jennifer R. Vala
KING & SPALDING LLP
191 Peachtree Street, N.E.
Atlanta, Georgia 30303-1763
(404) 572-4600 (telephone)
(404) 572-5100 (fax)

COUNSEL FOR PLAINTIFF
ERINMEDIA LLC

EXHIBIT

A



**WE'RE NOT ALL ON THE SAME CHANNEL, ISN'T THAT GREAT?**



**Thousands of shows... millions of different viewers... Nielsen counts them all.**

No one watches television just like everyone else, so it's important that programmers and advertisers know what viewers watch. Nielsen Media Research works hard to make certain our sample homes represent the entire television audience. We're committed to providing a level of accuracy and reliability that ensures no community is left out.

**For more information, visit www.nielsenmedia.com.**

©2006. Nielsen Media Research. All Rights Reserved

Nielsen
Media Research

**Every view counts.**

EXHIBIT
tabbles
B


Nielsen
Media Research



# Our Research

**What techniques do you use to collect viewing information?**
Nielsen Media Research uses People Meters, set-tuning meters, and paper diaries.

*People Meter*
Our national sample, composed of a cross-section of nearly 10,000 representative homes throughout the United States, is measured by People Meters, a technology that has been in place since 1987. These meters give us information about not only what is being viewed on the set, but also exactly which members of the household are watching.

The People Meter is a "box" — about the size of a paperback book — that's hooked up to each television set and is accompanied by a remote control unit. Each family member in a sample household is assigned a personal viewing button, which is matched to that person's age and sex. Whenever the TV is turned on, a light flashes on the meter, reminding viewers to press their assigned button and to indicate that they're watching television.

Additional buttons on the People Meter enable guests who are also watching to participate in the sample by entering their age, sex and viewing status into the system.

In addition to our national measurement, Nielsen also measures some of the nation's largest local markets (such as New York, Los Angeles and Chicago) with People Meter Technology.

The People Meter is used to produce household and persons audience estimates for broadcast and cable networks, as well as nationally-distributed barter-syndicated programs.

*Set-Tuning Meter*
Large to mid-sized local markets (such as Seattle, San Antonio and Memphis) are measured by a different type of meter — one that gives information about set-tuning only. In these markets, demographic information is provided by a separate sample of people who fill out seven-day paper diaries.

*Diary*

Smaller markets (such as Honolulu, Hawaii; Tallahassee-Thomasville, Fla., and Fargo-Valley City, N.D.) are measured by paper diaries only. These seven-day diaries (and eight-day in homes with DVRs) are mailed to homes to keep a tally of what is watched on each television set and by whom.

Each year we process about 1.6 million paper diaries from households across the country for the "sweeps" ratings periods.

**How do you know if someone in the metered sample is watching the TV, a video game, a VCR, or using a computer in conjunction with the TV?**

When Nielsen Media Research meters a home, we monitor all viewing devices linked through the TV set, and can identify which is being used.

**How do you know if people are reporting what they really watch?**

This is really a three-part question:

*What channel is being tuned?*

The meters electronically tell us what channel is being tuned.

*What program is on that channel?*

Program identification is taken from a combination of embedded electronic codes, which provide information on programs and channels. This is supplemented and cross-checked with other program listing information.

*Who is watching?*

When household members push their designated buttons on the People Meter remote, or make an entry into their paper diaries, this registers that they are actively watching or listening to a given program.

Since Nielsen Media Research measures who is watching with independent samples using People Meters, set-tuning meters, and diaries, we know that the different methods produce consistent audience estimates. Viewing status can also be cross-checked against the tuning status of the set-meter. We do periodic independent checks using phone coincidentals. And, four times a year, during the sweep months, we relate the sum of our local market measurements to our national measurements. These independent quality control checks also help ensure reliable information.

New advances like digital television have posed challenges for Nielsen Media Research and our ability to continually determine who is watching. But our new metering platform, the Active/Passive (A/P) Meter, can track viewers and

their tuning habits, whether the television viewing environment is digital, analog, or combined.